UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| JUSTIN J. STALEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 4:10-cv-00105-SEB-DML |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) | |
| Defendant. | ) | |

### Entry Discussing Complaint for Judicial Review

Justin J. Staley ("Staley") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

### I. Background

Staley applied for DIB and SSI on November 29, 2006, and February 12, 2007, respectively, alleging an onset date of March 28, 2006. His applications were denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted on May 13, 2009. Staley was present, accompanied by his attorney. Medical and other records were introduced into evidence. Staley, a medical expert and a vocational expert testified. The ALJ denied Staley's applications on August 7, 2009. On August 6, 2010, the Appeals Council denied Staley's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Staley met the insured status requirements of the Act through December 31, 2011; (2) Staley had not engaged in substantial gainful activity since March 28, 2006, the alleged onset date; (3) Staley had the following severe impairment: status post lumbar two-level spinal fusion; (4) Staley did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Staley had the following residual functional capacity ("RFC") to perform a range of sedentary work: he could lift, carry, push and pull 10 pounds occasionally and less than 10 pounds frequently; he could stand and/or walk for a total of two hours during an eight hour day with the option to sit for five minutes each 45 minutes, at his work station, and the minutes need not be used consecutively; he could sit for a total of six hours during an eight hour workday with an option to stand for five minutes each hour, at his work station, and the minutes need not be used consecutively; he could occasionally climb stairs and ramps, and he could occasionally balance; he could stoop, crouch, kneel and crawl at a less than occasional frequency; he could not climb ladders, ropes or scaffolding; he could not work at unprotected heights; he could not operate dangerous machinery; and he could have only minimal exposure to vibratory equipment; (6) Staley was unable to perform any past relevant work; (7) Staley was born on August 19, 1974, and was 31 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date; (8) Staley had at least a high school education and was able to communicate in English; (9) transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Staley was "not disabled," whether or not he had transferable job skills; and (10) considering Staley's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the regional economy that he could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Staley had not been under a "disability" as defined in the Act from March 28, 2006, through the date of the ALJ's decision.

## II. Discussion

### A. Applicable Law

To be eligible for DIB and SSI, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to make a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ concluded that although Staley had a severe impairment consisting of status post lumbar two-level spinal fusion, there were a significant number of sedentary exertional jobs in the regional economy that he could perform.

Staley argues that the ALJ's decision is not supported by substantial evidence. More specifically, he contends that the ALJ erred in failing to order post-hearing orthopedic x-rays or other tests, erred in finding Staley's mental impairment not severe and in failing to assess any limitation in functional capacity due to his mental impairment, erred in addressing the "failed spine operation" diagnosis of Dr. Chambers, overstated Staley's RFC, failed to make a proper credibility finding, and erred in failing to call a pain management specialist as a medical expert. The court will address each argument in turn.

Staley first argues that after the hearing the ALJ should have ordered x-rays of Staley's spine, per counsel's request. He contends that the ALJ was obligated to order additional objective testing because the medical expert testified that there were low-risk tests available to document an objective basis for Staley's back pain. Staley cites 20 C.F.R. § 404.1517 and similar regulations in support of this argument.

Social security regulations do not require an ALJ to order additional objective testing in any particular circumstance. 20 C.F.R. § 404.1517 provides that "[i]f your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests." *Id.* (emphasis added). The ALJ acknowledged counsel's request that she send Staley for x-rays of his entire spine. (R. at 9). The ALJ noted that post-surgical x-rays of the fused vertebrae showed that there was good alignment and good placement with no evidence of loosening. *Id.* The ALJ also noted that the orthopedic medical expert, Dr. Newman, testified that it was unlikely that x-rays of Staley's cervical, thoracic and lumbar spine would produce relevant evidence indicating the potential source of the pain Staley experienced. *Id.* The ALJ decided not to order additional spinal x-rays because the file already contained x-rays of the spine and it was unlikely that additional x-rays would produce relevant evidence. *Id.* The ALJ did not abuse her discretion in making this determination. In addition, the medical expert did not state that he could not render an opinion without additional testing. The ALJ concluded that she had sufficient medical evidence to evaluate Staley's impairment. Under these circumstances, the ALJ did not err in deciding not to order MRI's or other additional testing.

Staley next argues that the ALJ erred in finding that his mental impairment was "not severe" and in failing to assess any functional limitations based on that impairment. In a related claim, Staley argues that the ALJ overstated Staley's RFC because the ALJ failed to incorporate any limitations for mental and emotional difficulties. Staley contends that the ALJ failed to account for the report of consulting examiner Dr. Brown, Ph.D., who diagnosed Staley with depression (NOS) and anxiety disorder (NOS). (R. at 299).

The ALJ did discuss Dr. Brown's findings, including his Global Assessment of Functioning ("GAF") of 55-60. (R. at 12). A GAF score of 51-60 indicates "moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in one of the following: social, occupational, or school functioning." *Diagnostic and Statistical Manual of Mental Disorders-IV-TR* (2000). Staley reported to Dr. Brown that he had palpitations, sweating, trembling, and hyperventilation around large groups of people, and more recently, around friends. *Id.* Dr. Brown noted no hallucinations, delusions, illusions, or paranoia. *Id.* Staley was coherent and goal directed. *Id.*

The ALJ also discussed the findings of state agency consultants who concluded that although Staley had medically determinable impairments of depression (not otherwise specified) and anxiety (not otherwise specified), his mental impairments were not severe. (R. at 13). The state agency consultants took into account Dr. Brown's evaluation and determined that Staley had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. *Id.* The state agency report indicated that Staley was able to care for his dogs, do light cooking, help his daughter with homework, play poker online, watch television, visit friends, and read. (R. at 312, 13). Staley's girlfriend stated that she could tell Staley was more withdrawn and sad about his condition but believed that people who had not known him very long could not tell he was depressed. *Id.* The state agency report noted that Staley reported suicidal thoughts and distraught and sad feelings with regard to his pain. (R. at 312).

4

The ALJ stated that Staley confirmed at the hearing that he had not participated in any psychiatric therapy or hospitalization and that no psychotropic medications had been prescribed. *Id.* The ALJ adopted the opinion of the state agency consultants because it was supported by the overall record. *Id.* Neither the state agency consultants nor the ALJ ignored the findings of Dr. Brown. The ALJ did not err in adopting the opinion of the state agency psychological experts in determining Staley's RFC. The ALJ's determination that Staley did not have a severe mental impairment is supported by substantial evidence. Because the ALJ did not find that Staley's mental impairment warranted any limitations on his ability to work, the ALJ did not err in not including any mental or emotional restrictions in her RFC or in the hypothetical question posed to the vocational expert. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)(generally, when an ALJ relies on VE testimony in determining a claimant's disability at step five, the hypothetical question drawn from the RFC assessment and posed to the VE "must include all limitations supported by medical evidence in the record."). There was no reversible error in the ALJ's evaluation of Staley's mental impairments.

Staley next contends that the ALJ "played doctor" in addressing the "failed spine operation" diagnosis made by the surgeon who performed the spinal fusion, Dr. Chambers. In his progress notes dated October 16, 2006, Dr. Chambers noted that Staley had a "poor surgical result" while also noting that x-rays showed a solid arthrodesis, no evidence of implant loosening, good bone formation in the lateral gutters, and that Staley was neurologically intact. (R. at 277). Dr. Chambers further stated, "he's certainly had a surgical failure. He's considering disability. I've offered to fill that paperwork out for him." *Id.* In an August 2006 note, Dr. Chambers again wrote that Staley "had a poor surgical result. He is continuing to take significant amounts of medicine." (R. at 278). He wrote that Staley was neurologically intact, the wound had healed nicely, and x-rays showed good placement of his lumbar instrumentation without any evidence of loosening. *Id.*

During the hearing, Staley's attorney asked medical expert Dr. Newman whether he had any basis for disputing Dr. Chambers' characterization of the surgical failure. (R. at 99-100). Dr. Newman testified that the statements about a surgical failure were contradictory in light of the notes showing that there was a solid arthrodesis. (R. at 100). Later in the hearing, the ALJ "speculated" that the fact that Staley continued to complain of back pain after the surgery could have been why Dr. Chambers referred to a failed back syndrome, rather than anything being improper with the surgery. (R. at 113-114).

Staley argues that the ALJ's "speculation" was improper. The court does not agree. An ALJ impermissibly "plays doctor" when she reaches her own independent medical conclusion that is not supported by the record. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009). The ALJ's "speculation" in this instance was not erroneous. The ALJ did not substitute her lay opinion for that of Dr. Chambers. Rather, the ALJ discussed the findings of Dr. Chambers and Dr. Newman and accepted the RFC opinion of medical expert Dr. Newman. The ALJ did not make any baseless findings in relation to Staley's back surgery.

5

Moreover, Staley contends that Dr. Chambers believed that Staley was disabled. There is no evidence, however, supporting that belief, other than Dr. Chambers' apparent offer to fill out paperwork if Staley applied for benefits. Indeed, Dr. Chambers did not submit any paperwork or opinion as to Staley's back impairment. In addition, as pointed out by the Commissioner, even if Dr. Chambers did believe that Staley was "disabled," such opinion would not be conclusive. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'"); 20 C.F.R. §§ 404.1527(e) and 416.927(e) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

Next, Staley asserts that the ALJ made an improper credibility determination. He contends that the ALJ failed to provide a basis for her finding that Staley "exaggerates his pain and alleged dysfunctionality." (R. at 18). He also contends that the ALJ failed to consider the statements of Staley's girlfriend, Amber Robbins, and that the ALJ erroneously based her credibility determination on a lack of objective evidence.

"[T]he ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations." *Simila v. Astrue,* 573 F.3d 503, 517 (7th Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(2)-(4) (internal quotation omitted)). In this case, the ALJ discussed the evidence that related to each of these factors. (R. at 14-18). In doing so, the ALJ noted that Staley had made inconsistent statements, as evidenced by the medical records. (R. at 17). At the hearing, Staley alleged that he suffered numerous side effects from his pain medications, including drowsiness, dizziness, sweats, hot flashes, tiredness, constipation and feeling spacey. *Id.* The ALJ noted that the treatment notes of his pain management physicians, however, indicated that Staley had consistently reported no side effects from his medications, until he reported some sweating in April of 2009. *Id.* Staley testified to almost constant pain from his neck to his buttocks, but the ALJ noted that no medical record said anything about the upper levels of Staley's spine. (R. at 15).

In addition to discussing inconsistencies in Staley's statements, the ALJ discussed his treatment history, including steroid injections, medications and ultimately a decompression fusion from L4 to the sacrum on March 28, 2006. (R. at 15). After surgery, Staley was referred for physical therapy but Staley did not go. (R. at 15-16). When his surgeon refused to refill pain medications unless Staley attended therapy, Staley then participated in physical therapy. (R. at 16). The ALJ noted that Staley generally reported his pain relief as 50%, with some variations. *Id.*

The ALJ also discussed the various medical source opinions, (R. at 15-17), including the findings of consulting examining physician Dr. Jerrin who opined that Staley should be able to work 8 hours a day in a seated, standing or ambulatory position. (R. at 16-17). The orthopedic medical expert, Dr. Newman, testified that Staley was capable of performing sedentary work with various restrictions that were adopted by the ALJ in her RFC assessment. (R. at 14, 17).

The ALJ discussed notes of the pain clinic which indicated that Staley was able to perform 90 to 95% of his activities of daily living. (R. at 16). Staley, however, reported that he could not do much other than recline and watch television, in addition to watching his autistic three-year old son two days a week. (R. at 15). Staley testified that he had to reposition himself every 30 minutes when sitting, but the ALJ noted that he sat in an upright chair in the hearing room for more than an hour before changing positions. (R. at 18).

Staley contends that the ALJ's credibility determination was flawed, in part, because the ALJ failed to address the activity report completed by Staley's girlfriend. The Commissioner responds by asserting that the ALJ did address the girlfriend's report. The ALJ did mention several of the girlfriend's reports as they related to Staley's social functioning and ability to concentrate. (R. at 13). Staley points out that the ALJ did not specifically discuss the girlfriend's corroborating statements as to Staley having trouble getting comfortable to sleep, being able to walk half an hour to an hour before needing to rest, not performing chores or yard work because of his back pain, and watching television most of the day. The failure to address these particular statements, however, does not render the ALJ's credibility determination "patently wrong." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (a reviewing court affords a credibility finding "considerable deference and will overturn it only if 'patently wrong.'") (internal quotation omitted). The ALJ expressly gave some credit to Staley's allegations "by limiting him to sedentary work." (R. at 18). Furthermore, the ALJ explained her bases for finding that Staley had somewhat "exaggerated" his pain and inability to function. The court can trace the ALJ's reasoning in this regard and cannot substitute its own evaluation of Staley's credibility.

The court "will uphold an ALJ's credibility determination if the ALJ gave specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). Here, the ALJ explained her reasoning and her credibility assessment is supported by substantial evidence. The court does not find the ALJ's credibility determination to be "patently wrong."

Staley's final claim is that the ALJ should have called a pain management specialist as a medical expert instead of an orthopedic surgeon. This claim is not persuasive. The Commissioner correctly points out that the ALJ's decision as to whether to call a medical expert is discretionary. *See* 20 C.F.R. § 404.1527(f)(2)(iii). In this case, the ALJ called an orthopedic surgeon, Dr. Newman, to testify. There is no evidence indicating that Dr. Newman was not qualified to testify. Indeed, it is difficult to imagine a more qualified specialist than an orthopedic surgeon for a claimant who has alleged disability due to back pain and who has had spinal fusion surgery. The ALJ acted within her discretion in deciding to call Dr. Newman.

As noted above, the court's role in this case is not to attempt a *de novo* determination of Staley's entitlement to benefits. If the ALJ's view of the evidence is supported by substantial evidence, the court must affirm the decision. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the

claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (internal quotation omitted). The court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The court cannot reweigh the evidence, including the opinions of treating and non-examining physicians.

"An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, even if the court might have weighed the evidence differently, the ALJ sufficiently articulated her assessment of the evidence to enable the court to "trace the path of [her] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Staley's impairments and conclusion that he had not been under a disability as defined by the Act from March 28, 2006, through August 7, 2009, the ALJ's decision must be affirmed.

### III.  Conclusion

There was no reversible error in the assessment of Staley's applications for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Staley is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 09/27/2011

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana